UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JACQUELINE GRAY and DARREN GRAY, on behalf of themselves, individually, and on behalf of all others similarly-situated,

                                  Plaintiffs,

                    —against—

MID-BRONX CCRP EARLY CHILDHOOD CENTER, INC. and MID-BRONX COUNCIL SERVICES, INC., and MID-BRONX SENIOR CITIZENS COUNCIL INC, and WALTON AVENUE SENIOR HOUSING DEVELOPMENT FUND COMPANY INC, and MID-BRONX HOUSING DEVELOPMENT FUND CORPORATION, and EUGENE SMILOVIC HOUSING DEVELOPMENT FUND CORPORATION, and CONCOURSE AREA HOUSING CORPORATION, and WALTER E. PURYEAR, III, individually,

                               Defendants.
-----------------------------------------------------------------X

**AMENDED COMPLAINT**

**Case No.: 18-cv-07934 (ALC)**

Jury Trial Demanded

       JACQUELINE GRAY ("Jacqueline") and DARREN GRAY ("Darren") (together, where appropriate, as "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs" and/or "Rule 23 Plaintiffs," as those terms are defined below), by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C, as and for their Amended Complaint against MID-BRONX CCRP EARLY CHILDHOOD CENTER, INC. ("Childhood Center"), MID-BRONX COUNCIL SERVICES, INC. ("Mid-Bronx Council"), MID-BRONX SENIOR CITIZENS COUNCIL INC ("Mid-Bronx Senior"), WALTON AVENUE SENIOR HOUSING DEVELOPMENT FUND COMPANY INC ("Walton"), MID-BRONX HOUSING DEVELOPMENT FUND CORPORATION  ("Mid-Bronx Housing"), EUGENE SMILOVIC HOUSING DEVELOPMENT FUND CORPORATION ("Eugene"), CONCOURSE

AREA HOUSING CORPORATION ("Concourse") (these seven, together where appropriate, as "the Corporate Defendants"), and WALTER E. PURYEAR, III, ("Puryear"), individually, (all eight, together where appropriate, as "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.       This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (iv) the NYLL's requirement that employer furnish employees with a wage notice at hire containing specific categories of accurate information, N.Y. Lab. Law § 195(1); (v) the NYLL's requirement that employers furnish employees whose duties include performing manual labor more than 25% of the time with their earned wages not less frequently than on a weekly basis, NYLL § 191(1)(a); (vi) the NYLL's requirement that employers pay their employees an additional one hour's pay at the minimum wage rate if an employees' spread of hours exceeds ten in a workday from beginning to end, or if an employee works a split shift, or if both situations occur, 12 NYCCRR § 142-2.4; and (vii) any other claim(s) that can be inferred from the facts set forth herein.

2.       Plaintiffs worked for Defendants - - seven nominally distinct entities located in the Bronx that together operate as a single enterprise to provide community services in the form of child day care, elder care services such as "Meals-on-Wheels," and by hosting private community

events, and one of the enterprise's owners and managers - - as a manual worker performing various tasks from October 2012 until October 2018.  As described below, throughout their employment, Defendants willfully failed to pay Plaintiffs the overtime wages lawfully due to them under the FLSA and the NYLL.   Specifically, for the entirety of Plaintiff Jacqueline's employment, Defendants required her to work over forty hours per week at Defendants' day care facility, and then to work many more hours per week as an attendant at Defendants' event space, but failed to compensate her at the statutorily-required overtime rate of one and one-half times her regular rate of pay for any hours that she worked each week in excess of forty. Additionally, for the entirety of Plaintiff Darren's employment, Defendants required him to work over forty hours per week delivering food as part of Defendants' "Meals-on-Wheels" program, as well as serving as a porter at Defendants' day care facility and senior housing, but Defendants failed to compensate him at the statutorily-required overtime rate of one and one-half times his regular rate of pay for any hours that he worked each week in excess of forty. Instead, Defendants paid Plaintiffs at their straight-time rate of pay for all hours worked each week, including those in excess of forty, by issuing to them pay checks from their various different entities - - all of which had the same ownership, management, and employees - - to avoid paying Plaintiffs overtime compensation by making it appear as if Plaintiffs worked no more than forty hours per week for each entity.

3.      Additionally, Defendants violated the NYLL by: failing to provide Plaintiffs with accurate wage statements on each payday or with any wage notice at the times of their respective hire; paying Plaintiffs less frequently than on a weekly basis; and failing to provide Plaintiffs with spread-of-hours pay whenever their workday exceeded ten hours from start to finish or when they worked a split shift.

4.      Defendants have paid and treated all their workers who were paid on an hourly basis in the same manner.

5.      Accordingly, Plaintiffs bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.  Plaintiffs bring all claims under the NYLL on behalf of themselves, individually, and on behalf of any FLSA Plaintiff, as that term is defined below, that opts in to this action.

6.      Plaintiffs also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable NYLL limitations period who suffered damages as a result of Defendants' violations of the NYLL and the supporting New York State Department of Labor regulations.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

8.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

9.      At all relevant times herein, Plaintiffs worked for Defendants in New York and were "employees" entitled to protection as defined by the FLSA, the NYLL, and the NYCCRR.

10.     At all relevant times herein, Defendant Childhood Center was and is a New York corporation, with its principal place of business located at 1125 Grand Concourse, Bronx, New York 10452.

11.     At all relevant times herein, Defendant Mid-Bronx Council was and is a New York corporation, with its principal place of business located at 900 Grand Concourse, Bronx, New York 10451.

12.     At all relevant times herein, Defendant Mid-Bronx Senior was and is an organization, with its principal place of business also located at 900 Grand Concourse, Bronx, New York 10451.

13.     At all relevant times herein, Defendant Walton was and is an organization, with its principal place of business also located at 900 Grand Concourse, Bronx, New York 10451.

14.     At all relevant times herein, Defendant Mid-Bronx Housing was and is an organization, with its principal place of business also located at 900 Grand Concourse, Bronx, New York 10451.

15.     At all relevant times herein, Defendant Eugene was and is an organization, with its principal place of business also located at 900 Grand Concourse, Bronx, New York 10451.

16.     At all relevant times herein, Defendant Concourse was and is a New York corporation, with its principal place of business also located at 900 Grand Concourse, Bronx, New York 10451.

17.     At all relevant times herein, Defendant Puryear was and is an owner of the Corporate Defendants, who controlled the terms of employment for all of Defendants' employees, in that he had the power to hire and fire all employees, supervised and directed employee work,

determined the rate and method of wage payments to all employees, and was responsible for maintaining employment records.  To that end, Defendant Puryear both hired and fired Plaintiffs.

18.     At all relevant times herein, all Defendants were and are "employers" within the meaning of the FLSA and the NYLL.  Additionally, during all relevant times, the Corporate Defendants' qualifying annual business exceeded and exceeds $500,000.00, and the Corporate Defendants were and are engaged in interstate commerce within the meaning of the FLSA, as they employ two or more employees, interact with and receive payments from federal government health programs that move across state lines, and order food and supplies from companies outside of New York for their event and day care services, the combination of which subjects the Corporate Defendants to the FLSA's overtime requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually, on their own behalf, as well as on behalf of those in the following collective:

> Current and former employees, who during the applicable FLSA limitations period, were paid on an hourly basis, and who consent to file a claim to recover damages for overtime compensation that is legally due to them ("FLSA Plaintiffs").

20.     Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

6

21.     At all times during the applicable FLSA limitations period, Defendants are and have been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

22.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

<u>**RULE 23 CLASS ALLEGATIONS**</u>

23.     In addition, Plaintiffs seek to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on their own behalf, as well as on behalf of those who are similarly-situated who, during the applicable limitations period, were subjected to violations of the NYLL and the NYCCRR.

24.     Under FRCP 23(b)(3), Plaintiffs must plead that:

a.     The class is so numerous that joinder is impracticable;

b.     There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

c.     Claims or defenses of the representative are typical of the class;

d.     The representative will fairly and adequately protect the class; and

e.     A class action is superior to other methods of adjudication.

25.     Plaintiffs seeks certification of the following FRCP 23 class:

Current and former employees who worked for Defendants within the State of New York and whom Defendants paid on an hourly basis ("Rule 23 Plaintiffs").

<u>Numerosity</u>

26.     During the applicable statutory period the Defendants have, in total, employed at least forty employees that are putative members of this class.

<u>Common Questions of Law and/or Fact</u>

27.     There are questions of law and fact common to each and every Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that Defendants required and require Rule 23 Plaintiffs to perform; (2) the manner of compensating Rule 23 Plaintiffs; (3) whether Defendants paid and pay Rule 23 Plaintiffs overtime wages at time and one-half their respective regular rates of pay for all hours worked over forty in a week; (4) whether Defendants failed and fail to furnish Rule 23 Plaintiffs with wage statements on each payday accurately containing the information required by NYLL § 195(3); (5) whether Defendants failed and fail to furnish Rule 23 Plaintiffs with accurate wage notices at the time of their hire accurately containing the information required by NYLL § 195(1); (6) whether Defendants paid Rule 23 Plaintiffs less frequently than on a weekly basis; (7) whether Defendants paid Rule 23 Plaintiffs one extra hour of pay at the minimum wage rate on all days when their workday exceeded ten hours from start to finish or when they worked a split shift; (8) whether Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (9) whether Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and NYCCRR; and (10) if so, what constitutes the proper measure of damages.

<u>Typicality of Claims and/or Defenses</u>

28.     As described in the "Background Facts" section below, Defendants employed Plaintiffs and Rule 23 Plaintiffs within the meaning of the NYLL and the NYCCRR.  Plaintiffs'

claims are typical of the claims of the Rule 23 Plaintiffs whom they seek to represent, as the Rule 23 Plaintiffs work and/or have worked for Defendants in New York, and Defendants did and do not pay them overtime wages for all hours worked over forty each week, nor did and do Defendants furnish them with proper wage statements or wage notices when the law requires, nor did Defendants pay them at least as frequently as on a weekly basis, nor did Defendants pay them an extra hour of pay at the minimum wage rate when they worked over ten hours in a workday or a split shift. Plaintiffs and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL and the NYCCRR to be paid all of their earned overtime wages, to be furnished with accurate wage statements on each payday and wage notices upon hire, to be paid at least as frequently as on a weekly basis, and to receive an additional hour's pay at the minimum wage rate when their spread of hours exceeds ten in a workday or they worked a split shift. Plaintiffs and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL and the NYCCRR. Plaintiffs and the Rule 23 Plaintiffs all have suffered injury, including lack of prompt compensation or under-compensation due to Defendants' common policies, practices, and patterns of conduct. Thus, Plaintiffs' claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendants' defenses to those claims.

<u>Adequacy</u>

29.     Plaintiffs, as described below, worked the same or similar hours as the Rule 23 Plaintiffs throughout their employment with Defendants. Defendants regularly failed to pay Plaintiffs overtime wages at the rate of time and one-half their regular rates of pay for all hours worked over forty each week, did not furnish Plaintiffs with accurate wage statements on each payday, did not furnish Plaintiffs with an accurate wage notice upon their respective times of hire,

did not pay Plaintiffs at least as frequently as on a weekly basis, and did not pay Plaintiffs an additional hour's pay at the minimum wage rate when their spread of hours exceeded ten in a workday or when Plaintiffs worked a split shift, which is substantially similar to how the Defendants paid and treated and pay and treat the Rule 23 Plaintiffs.  Plaintiffs fully anticipate providing discovery responses and testifying under oath as to all of the matters raised in this Amended Complaint and that will be raised in the Defendants' Answer.  Thus, Plaintiffs would properly and adequately represent the current and former employees whom the Defendants have subjected to the treatment alleged herein.

30.     Additionally, Plaintiffs' counsel has substantial experience in this field of law.

Superiority

31.     Plaintiffs have no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, Defendants treated Plaintiffs identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

32.     Any lawsuit brought by current and former New York employees of Defendants whom Defendants paid on an hourly basis would be identical to a suit brought by any other similar employee for the same violations.  Thus, separate litigation would risk inconsistent results.

33.     Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## **BACKGROUND FACTS**

34.     The Corporate Defendants are seven nominally distinct entities that in reality operate as a single enterprise, in that they all: have an interrelation of operations in providing housing and community services to Bronx-based senior citizens and other low-income residents;

comingle and share employees and management between the various entities; are commonly managed by the same personnel, i.e., Defendant Puryear, who both owns and manages the entire enterprise and who personally directed Plaintiffs to perform work for/on behalf of the various distinct entities; and are commonly owned and controlled financially by both Defendant Puryear and his mother, Jeannette Puryear.

35.     Defendants' business is to provide housing and community services to senior citizens and other low-income residents of the Bronx, which includes operating a day care center, an event space for rental, GED programs, a food pantry, transportation services, and a "Meals-on-Wheels" program.

36.     Defendants operate their enterprise out of at least two buildings in the Bronx - - 1125 Grand Concourse and 900 Grand Concourse - - with Defendants' child day care facility operating out of the former, and Defendants' senior housing and "Meals-on-Wheels" programs and event space housed in the latter.

<u>Jacqueline Gray</u>

37.     On or about October 1, 2012, Plaintiff Jacqueline commenced her employment with Defendants as a manual worker, providing "day care" work during daytime hours at 1125 Grand Concourse, and "attendant" work for events at night at 900 Grand Concourse, with each facility located about a fifteen-minute walk from the other.

38.     As a "day care worker," Plaintiff Jacqueline's primary duties involved taking care of children at the day care, including cooking for the children and cleaning the space where the children congregated.

39.     As an event space "attendant," Plaintiff Jacqueline's primary duties included cleaning, cooking food, delivering food, setting up tables for events, and serving food and drinks for events, such as weddings and parties.

40.     In both capacities, Plaintiff Jacqueline spent more than 25% of her time performing manual work including, *inter alia*, cooking, cleaning, performing food service, and physically handling children.

41.     Throughout her employment, Plaintiff Jacqueline worked at the day care center from 8:00 a.m. to 4:00 p.m. on Monday through Friday, for approximately forty hours per week.

42.     Immediately following her day care shifts, Plaintiff Jacqueline walked down the street to set up for and work events for Defendant Council at Defendants' event space.  For the approximate first six months of her employment, Jacqueline intermittently worked at Defendants' event space on an as-needed basis, though typically for four hours total Monday to Friday, and a further eight hours on Saturday.  Thus, from the start of her employment until March 2013, Jacqueline worked at least fifty-two hours, consisting of forty hours per week at the day care center and a further twelve hours at the event space.  Thereafter, beginning in or around March 2013, and continuing until the end of her employment in January 2017, Jacqueline continued to work from 8:00 a.m. to 4:00 p.m. on Monday through Friday, and thus for approximately forty hours per week at the day care center, and then worked at the event space from approximately 4:15 p.m. until typically 10:00 p.m. each day, on Mondays to Thursdays, and from 4:15 p.m. until as late as 4:00 a.m. on Fridays and Saturdays, for a total of approximately eighty-six and one-half hours per week. During some occasions, Defendants also required Jacqueline to work overnight beyond the 4:00 a.m. hour on an as-needed basis to accommodate certain events which in at least two instances,

required Jacqueline to work as many as 107 hours in a week, when combined with her time worked at the day care.

43.     Thus, from March of 2013 to the end of her employment, Plaintiff Jacqueline typically worked for Defendants for at least eighty-six and one-half hours per week and on occasion many more hours than that.

44.     For her work, Plaintiff Jacqueline received multiple paychecks in a bi-weekly pay period from the Corporate Defendants' different individual entities with each check being for no more than forty hours of work per week, for which Defendants paid Plaintiff Jacqueline at no more than her straight-time rate.

45.     From the start of her employment until December 31, 2014, Defendants paid Plaintiff Jacqueline $8.50 per hour.

46.     From January 1, 2015 until December 31, 2015, Defendants paid Plaintiff Jacqueline $8.75 per hour.

47.     From January 1, 2016 until December 31, 2016, Defendants paid Plaintiff Jacqueline $10.00 per hour.

48.     From January 1, 2017 until the end of her employment February 15, 2017, Defendants paid Plaintiff Jacqueline $11.00 per hour.

49.     Even though Defendants required Plaintiff Jacqueline to work, and Jacqueline did in fact work an average of eighty-six and one-half hours per week, Defendants failed to pay her at the rate of one and one-half times her straight-time rate for any hours that she worked over forty in a workweek.

50.     By way of example only, during the consecutive workweeks of October 1 through October 14, 2016, Defendants required Plaintiff Jacqueline to work, and Jacqueline did work, from

8:00 a.m. to 4:00 p.m. on Monday through Friday at the day care center for both weeks, and from 4:15 p.m. to as late as 3:00 a.m. on Monday through Thursday, and 4:15 p.m. to 4:00 a.m. on Friday and Saturday of both weeks at the event space, for a total of 214 hours during these two weeks.

51.     During this two-week period, Defendants paid Plaintiff Jacqueline using three separate checks - - the first from Defendant Senior Citizens Council for seventy-nine hours of work, the second from Defendant Mid-Bronx Council for eighty hours, and the third also from Defendant Senior Citizens Council for fifty-five hours - - which averages 107 hours per week. Defendants paid Jacqueline at her straight-time rate of $10.00 for every hour worked during these two weeks.

52.     Defendants always paid Plaintiff Jacqueline on a bi-weekly basis.

53.     On each occasion when they paid Plaintiff Jacqueline, Defendants failed to provide her with a wage statement that accurately listed, *inter alia*, her overtime rate of pay for all hours worked over forty each week.

54.     Additionally, Defendants did not provide Plaintiff Jacqueline with any wage notice upon her hire, let alone one that accurately contained, *inter alia*, her overtime rate of pay as designated by the employer.

55.     Further, Defendants required Plaintiff Jacqueline to work a split shift and/or to work over ten hours for most of her workdays, while failing to pay her an additional hour's pay at the then-applicable minimum wage rate on every such day.  For example, during the workweek of October 1 through October 7, 2016, Defendants required Jacqueline to work, and Jacqueline did in fact work, over ten hours on six separate days.  Nonetheless, despite working over ten hours on

each of those days, Defendants failed to pay Jacqueline an additional hour's pay at the then-applicable minimum wage rate of $9.00.

Darren Gray

56.     In January 2014, Plaintiff Darren commenced his employment with Defendants as a manual worker, by serving as a porter and food deliverer.  He worked in that role until October 2018.

57.     As a porter, Plaintiff Darren's primary duties included taking out the garbage, cleaning, buffing the floors, and changing lightbulbs at Defendants' facility located 1125 Grand Concourse, Bronx, New York 10452, 1181 Walton Avenue, New York 10452, 280 East 170th Street, Bronx, New York 10452, and 900 Grand Concourse, Bronx, New York 10451.

58.     As a food deliverer, Plaintiff Darren delivered food as part of a "Meals-on-Wheels" program by loading and unloading the food.

59.     In both capacities, Plaintiff Darren spent more than 25% of his time performing manual work including, *inter alia*, taking out the garbage, delivering food, and cleaning.

60.     Throughout his employment, Plaintiff Darren worked at Defendant Mid-Bronx Council from 9:00 a.m. to 4:00 p.m. on Monday through Friday, for approximately thirty-five hours per week, as part of the "Meals-on-Wheels" program.

61.     Immediately following his shifts as part of the "Meals-on-Wheels" program, Plaintiff Darren walked down the street to work as a porter for Defendant Childhood Center from 4:15 p.m. to 9:45 p.m. on Monday through Friday, for approximately twenty-eight and three-quarters hours per week, throughout his employment,

62.     In addition, from 2014 to 2015, before commencing his shift for the "Meals-on-Wheels" program, Plaintiff Darren worked for Defendants from 7:00 a.m. to 8:30 a.m. as a porter

15

on Monday, Tuesday, Thursday, and Friday, wherein he cleaned the garbage compactor, emptied apartments, and waxed floors.

63.     Thus, from 2014 through 2015, Plaintiff Darren worked at least sixty-five and one quarter hours and from 2015 through 2018, Darren worked sixty-three and three-quarter hours per week, and on occasion many more hours.

64.     For his work, Plaintiff Darren received multiple paychecks in a bi-weekly pay period from the Corporate Defendants' different individual entities, with each check being for no more than forty hours of work per week, for which Defendants paid Darren at no more than his straight-time rate of pay.

65.     From the start of his employment until December 31, 2014, Defendants paid Plaintiff Darren $8.00 per hour.

66.     From January 1, 2015 until December 31, 2015, Defendants paid Plaintiff Darren $8.75 per hour.

67.     From January 1, 2016 until December 31, 2016, Defendants paid Plaintiff Darren $9.00 per hour.

68.     From January 1, 2017 until the end of his employment in December 31, 2017, Defendants paid Plaintiff Darren $11.50 per hour.

69.     From January 1, 2018 until the end of his employment on around October 26, 2018, Defendants paid Plaintiff Darren $13.50 per hour.

70.     Even though Defendants required Plaintiff Darren to work, and Darren did in fact work in excess of forty hours in a week, Defendants failed to pay him at the rate of one and one-half times his straight-time rate for any hours that he worked over forty in a workweek.

71.     By way of example only, for the following workweeks, Plaintiff Darren worked the following amount of hours in excess of forty, but Defendants only paid him at his then-straight-time rate of $8.00 for every hour that he worked, including those in excess of forty:

- March 28, 2014 – 15.6;

- April 4, 2014 – 15.6;

- April 11, 2014 – 13.4;

- April 18, 2014 – 13.4;

- April 25, 2014 –14.9;

- May 2, 2014 – 14.9;

- May 9, 2014 – 29.3;

- May 16, 2014 – 35.3;

- May 23, 2014 – 18.6;

- May 30, 2014 – 18.6;

- June 6, 2014 –14.9;

- June 6, 2014 – 14.9;

- June 13, 2014 – 14.9;

- June 20, 2014 – 16.6;

- July 4, 2014 – 12.3;

- July 11, 2014 – 12.3;

- July 18, 2014 – 11.1; and

- July 25, 2014 – 11.1.

72.     Defendants always paid Plaintiff Darren on a bi-weekly basis.

73.     On each occasion when they paid Plaintiff Darren, Defendants failed to provide him with a wage statement that accurately listed, *inter alia*, his overtime rate of pay for all hours worked over forty each week.

74.     Additionally, Defendants did not provide Plaintiff Darren with any wage notice upon his hire, let alone one that accurately contained, *inter alia*, his overtime rate of pay as designated by the employer.

75.     Further, Defendants required Plaintiff Darren to work a split shift and/or to work over ten hours for most of his workdays, while failing to pay him an additional hour's pay at the then-applicable minimum wage rate on every such day.

76.     Defendants treated and paid Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs in the same manner described herein.

77.     Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs and overhead.

78.     Each hour that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs worked was for Defendants' benefit.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

79.     Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

80.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

81.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are employees within the meaning of the FLSA.

82.     As also described above, Plaintiffs and FLSA Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the FLSA's overtime provisions.

83.     Defendants willfully violated the FLSA.

84.     Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

85.     Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime under the NYLL and the NYCCRR*

86.     Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

87.     NYLL § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

88.     As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, are employees within the meaning of the NYLL and the NYCCRR.

89.     As also described above, Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCCRR's overtime provisions.

90.     Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

91.     Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCCRR's overtime provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Statements in Violation of the NYLL*

92.     Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

93.     NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

94.     As described above, Defendants, on each payday, failed to furnish Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, with accurate wage statements containing the criteria required under the NYLL.

95.     Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, in the amount of $100.00 for each workweek after the violation occurred, up to a statutory cap of $2,500.00.

96.     On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, in the amount of $250.00 for each workday after the violation occurred, up to a statutory cap of $5,000.00.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Proper Wage Notices in Violation of the NYLL*

97.     Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

98.     NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

99.     As described above, Defendants failed to furnish Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, with any wage notice at hire, let alone one accurately containing all of the criteria required under the NYLL.

100.    Prior to February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, in the amount of $50.00 for each workweek after the violations initially occurred, up to a statutory cap of $2,500.00.

101.    On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Pay All Wages on a Timely Basis in Violation of the NYLL*

102.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

103.    NYLL § 191(1)(a) requires that employers pay their manual worker employees their wages on at least as frequently as a weekly basis.

104.    As described above, Defendants are employers within the meaning of the NYLL, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, are manual worker employees within the meaning of the NYLL.

105.    As also described above, Defendants failed to pay Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, all wages earned on at least as frequently as a weekly basis as the NYLL requires.

106.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, are entitled to any unpaid wages, liquidated damages associated with any missed or late payment, interest, and attorneys' fees for Defendants' violations of the NYLL's requirement to pay all wages to manual workers on at least as frequently as a weekly basis.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Violation of the NYLL's and the NYCCRR's Spread of Hours and Split Shift Requirements*

107.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

108.    NYLL § 652 and 12 NYCCRR § 142-2.4 provide that an employee shall receive one extra hour's pay at the minimum hourly wage rate for: (1) any day worked in which the spread of hours exceeds ten from beginning to end; or (2) any day during which the employee worked a split shift; or (3) when both situations occur.

109.    As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, are employees within the meaning of the NYLL and the NYCCRR.

110.    As also described above, Defendants failed to provide Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, with an additional hour's pay at the minimum

wage rate on each day when their spread of hours exceeded ten or where they worked a split shift for a particular workday.

111.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, are entitled to this extra hour of pay, at the minimum wage rate, for all days worked in excess of ten hours and/or for those days where they worked a split shift.

112.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff that opts in to this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' failure to pay the required spread of hours or split shift pay.

## DEMAND FOR A JURY TRIAL

113.    Pursuant to FRCP 38(b), Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.    An order restraining Defendants from any retaliation against Plaintiffs, FLSA Plaintiffs, and/or Rule 23 Plaintiffs for participation in any form in this litigation;

d.      Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.      Certification of the claims brought in this case under the NYLL as a class action pursuant to FRCP 23;

f.      Designation of Plaintiffs and their counsel as class/collective action representative under the FRCP and the FLSA;

g.      All damages that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs would have received but for the Defendants' unlawful payment practices;

h.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

i.      Awarding Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and other costs, and an award of a service payment to Plaintiffs;

j.      Pre-judgment and post-judgment interest, as provided by law; and

      k.      Granting Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs such other and further

relief as this Court finds necessary and proper.

Dated:  New York, New York
        April 18, 2019

                         Respectfully submitted,

                         BORRELLI & ASSOCIATES, P.L.L.C.
                         *Attorneys for Plaintiffs*
                         910 Franklin Avenue, Suite 200
                         Garden City, New York 11530
                         Tel.: (516) 248 – 5550
                         Fax: (516) 248 - 6027

          By:                          
                         GIL AUSLANDER (GA 0903)
                         ALEXANDER T. COLEMAN (AC 1717)
                         MICHAEL J. BORRELLI (MB 8533)