# BORRELLI & ASSOCIATES
## P.L.L.C.

www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

January 29, 2020

*Via ECF and Electronic Mail*
The Honorable Andrew L. Carter
United States District Judge for the
Southern District of New York
40 Foley Square
New York, New York 10007
Email: ALCarterNYSDChambers@nysd.uscourts.gov

      Re:   *Gray, et al. v. Mid-Bronx Early Childhood Center, Inc., et al.*,
              Docket No. 1:18-cv-07934-ALC

Dear Judge Carter:

      We represent Plaintiffs Jacqueline Gray and Darren Gray in this wage and hour action against Mid-Bronx CCRP Early Childhood Center, Inc., Mid-Bronx Council Services, Inc., Mid-Bronx Senior Citizens Council Inc, Walton Avenue Senior Housing Development Fund Company Inc, Mid-Bronx Housing Development Fund Corporation, Eugene Smilovic Housing Development Fund Corporation, Concourse Area Housing Corporation, and Walter E. Puryear, III, individually, (together as "Defendants"), ("Defendants," together with Plaintiffs, as "the Parties"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). As Defendants advised in their letter of October 31, 2019, the Parties have reached a settlement in principle following multiple mediations and months of negotiations, which they have now reduced to a formal written agreement ("Agreement"), attached hereto as **Exhibit A**. We write now, on behalf of the Parties, to explain the terms of the Parties' settlement with respect to Plaintiffs' FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]

---

[1] Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the Parties' Agreement, do not require court approval for dismissal under *Cheeks*. *Simono v. Gemco Realty II, LLC*, No. 1:16-cv-05385 (AJN), ECF # 32 at 2 n.1 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)); *see also Greggio v. Premier Cardiology Consultants, PLLC, et al.*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36 (E.D.N.Y. Feb. 23, 2018) (noting that courts "have regularly approved of the practice whereby parties

I.      **<u>Procedural History and Settlement Agreement Terms</u>**

On August 30, 2018, Plaintiff Jacqueline Gray ("Jacqueline") filed this action on behalf of herself and all others similarly-situated, against the originally named Defendants, Mid-Bronx CCRP Early Childhood Center, Inc., Mid-Bronx Council Services, Inc., Mid-Bronx Senior Citizens Council Inc, Concourse Area Housing Corporation ("Original Defendant Entities"), and Walter E. Puryear, III - - a group of not-for-profit organizations and one of its owners and managers, whom Jacqueline claimed together provide various services to communities in the Grand Concourse area of the Bronx, New York, including child day care, elder care services such as "Meals-on-Wheels," and by hosting private community events. Plaintiff Jacqueline alleges that the Original Defendant Entities were all part of one single enterprise owned and controlled by Defendant Puryear, and that together, these Defendants all served as her joint employer. Jacqueline alleges that she worked for Defendants' enterprise from October 1, 2012 through February 15, 2017 in two different roles: as a child daycare employee; and as an "attendant" working at events that Defendants hosted from time-to-time. She alleges that Defendants, as it pertains to the FLSA, paid her for her work by segregating her hours worked across multiple different entities to avoid paying her one and one-half times her regular rate of pay when her hours worked for the enterprise as a whole exceeded forty each week. That is, despite working more than forty hours in a week combined across the different entities, Jacqueline claims, for example, that Defendants paid her for some of those hours on one paystub affiliated with one of the Original Defendant Entities, and for other hours on a separate paystub affiliated with yet another of the Original Defendant Entities, thereby causing her paystubs to reflect fewer than forty hours of work each week on each stub.

Jacqueline's husband, then opt-in Plaintiff Darren Gray ("Darren"), who claims to have worked for Defendants from January 3, 2014 to October 26, 2018 as a porter and food deliverer, joined this action on March 25, 2019, alleging identical claims as Jacqueline. ECF # 29. After some initial confusion over who Defendants' counsel represented, and after exchanging documents and information regarding the various entities for which Plaintiffs claimed that they provided work and that paid Plaintiffs at one time or another, Plaintiffs - - both Jacqueline and Darren - - filed an Amended Complaint on April 18, 2019 (ECF # 32), which included three additional entities, added Darren as a named Plaintiff, and otherwise alleged substantially the same as in the original. The Amended Complaint, as did the original, included both collective and class action claims. All Defendants answered the Amended Complaint on May 9, 2019 (ECF # 50), denying all of Plaintiffs' material allegations.

---

submit their FLSA-related agreement to the Court for approval, and settle plaintiff's other claims, including under the NYLL, by private agreement.").

The Parties appeared before Judge Ona T. Wang for an initial conference on April 4, 2019, exchanged discovery, and proceeded under this Court's mediation referral order, which the Court originally entered at the start of this case on November 5, 2018 (ECF # 9). Thereafter, the Parties exchanged hundreds of pages of time records, payroll data, and financial information pertaining to the different Defendant entities. Throughout discovery, Defendants vehemently opposed Plaintiffs' joint employer / single enterprise argument. In Defendants' view, the Defendant entities were indeed separate and distinct not-for-profit organizations that served the Bronx community for several decades and for different purposes. Defendants argued that: these entities used different employees to provide those services; each maintained different sets of employee records and policies; and each paid its employees through separate payroll systems. Defendants further argued that Plaintiffs were the only two individuals claiming that their pay was split across different stubs for different entities, and that even if true, Plaintiffs worked far fewer hours than they claimed, which was reinforced by Defendants' time records. Thus, even if Plaintiffs' allegations were true, Defendants argued that Plaintiffs would be owed a small fraction of their alleged damages.

Based on the discovery exchanged, Plaintiffs agreed to proceed with mediation as to themselves only, forgoing potential conditional and/or class certification under the FLSA and Rule 23, respectively. The Parties participated in two mediations session with a Court-appointed mediator, Marc Swartz, Esq., on June 25 and July 30, 2019, which helped move the Parties closer together, but ultimately did not result in a settlement. Thereafter, after exchanging additional documents and damages calculations, the Parties ultimately reached a compromise based on a combination of Defendants' records and Plaintiffs' allegations, for a total amount of $46,000.00 ("Settlement Sum"). The Settlement Sum will be distributed as follows:

- <u>Plaintiff Jacqueline</u>: the net amount (after attorneys' fees and costs) of $7,229.96;

- <u>Plaintiff Darren</u>: the net amount (after attorneys' fees and costs) of $22,693.28;

    *and*

- <u>Borrelli & Associates, P.L.LC.</u>: $16,076.76, consisting of $1,115.14 of the top as reimbursement for counsel's out-of-pocket litigation expenses, and one-third of the Settlement Sum, which is $14,961.62, *after* reduction of expenses as attorneys' fees.

The Settlement Sum will be paid out in four separate installments over the course of 300 calendar days from the date this Court approves the Agreement. Given the lengthy payment term, Defendants shall also pay interest at a rate of 9% over the course of the payout, and as an incentive to avoid the same, should they become able to pay more quickly, they will do so and thereby reduce

their interest payments. For the reasons described below, Plaintiffs, on behalf of all Parties, respectfully submit that this amount and allocation is fair and reasonable under the circumstances.

## II. The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Arrango v. Scotts Co., LLC*, 2019 WL 117466, at *2 (S.D.N.Y. Jan. 7, 2019). The Parties submit that their settlement of Plaintiff's FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors.

### A. *Range of Possible Recovery*

Here, Plaintiffs allege that they worked for Defendants in various capacities and were paid by various entities at different times and different weeks. With respect to the FLSA, prior to review of Defendants' time and payroll records, Plaintiffs claimed that Defendants shortchanged them by a combined total of an estimated $75,454.94 in unpaid wages, based on a combined average of 65.5 hours worked per week. Based on Defendants' records, however, if accurate, which Plaintiffs dispute, and if correct on their single enterprise/joint employer theory, Plaintiffs would have been shorted a combined $9,080.24. Defendants' own calculation based on their records produced a lower combined damages figure of $6,916.13. Defendants also argued that any allegedly owed overtime wages were based on an accounting error that solely affected Plaintiffs, meaning that if Defendants were indeed liable, that Plaintiffs would not be entitled to liquidated damages based on Defendants' otherwise good faith effort to comply with the FLSA. And they or course maintained that each entity was separate, meaning that Plaintiffs would not be owed any overtime if that stance proved true. Thus, a realistic range of recovery for Plaintiffs' claims in this matter was between zero and $75,454.94, with the potential for that amount to double as liquidated damages. Based on their distribution under the Parties' Agreement, after deduction of attorneys'

4

fees and costs, Plaintiffs are receiving the gross amount of $29,944.21.[2] This combined figure represents approximately 20% of their maximum recovery under the FLSA, including liquidated damages, based on their recollection of their hours worked without regard to Defendants' records, and 162% percent of their maximum potential recovery when taking Defendants' records into account. The outcome here is therefore highly reasonable. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B.      *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, depositions would immediately commence, followed assuredly by dispositive motion practice. Thereafter, if Plaintiffs withstood Defendants' motion, the Parties were to proceed to a trial on the merits for most of the claims given the Parties' hotly disputed issues of material fact with respect to Plaintiffs' alleged hours worked and Defendants' status as a joint employer/single enterprise. At bottom, even if successful at the summary judgment and trial stages, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum. Plaintiffs understand that if they were to continue with the litigation - - even if successful - - they may never receive more money than what Defendants are now offering. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation risks only expected to substantial rise for all Parties, the Settlement Sum is especially fair and reasonable.

### C.      *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place over several months, and concluded only after substantial discovery was exchanged and completed after two in-person mediation sessions with a District-appointed panel member. There was no fraud or collusion here. *E.g., Hernandez v. Anjost Corp.,* 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process.").

---

[2] Each Plaintiff's individual share of the overall settlement is based on their proportional share of their respective total maximum damages combining all claims under *both* the FLSA and the NYLL, based on Defendants' time records.

Furthermore, the Agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiffs' release in the Agreement is limited to any wage and hour claims that Plaintiffs have or may have had against Defendants and their principals, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180-81 (S.D.N.Y. March 30, 2015). Likewise, the Agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 96 F. Supp. 3d at 177-78); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks*, 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); *with Gonzalez*, 2015 WL 6550560, at *3 (citing *Cheeks*, 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

### D.      *The Requested Attorneys' Fees are Reasonable*

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $14,961.62, limited to one-third of the total settlement amount after reducing counsel's litigation expenses from the Settlement Sum. Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) (stating that "we have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *see also Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Additionally, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of November 27, 2019, prior to finalizing this motion and the Parties' settlement agreement Plaintiff's counsel has billed over 200 hours on this matter - - an adversarial litigated case wherein the parties: engaged in multiple rounds of pleadings; produced substantial discovery that included the exchange and analysis of hundreds of pages of documents and electronically stored information; meticulously calculated Plaintiffs' estimated damages based on time records compiled for multiple entities; and prepared for and attended two mediation sessions, leading to extensive correspondence and discussions between and among counsel on settlement - - amounting to $48,109.00 in fees if calculated pursuant to the lodestar (as of the time of this drafting), an amount obviously substantially more than the $14,961.62 contingency fee that counsel seeks. This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiffs' counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $275.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and lead associate on this matter; $200.00 to $250.00 per hour for other associates working on the matter; and $90.00 to $125.00 per hour for paralegals and law clerks respectively. Courts routinely approve these rates in similar cases. *See, e.g. Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *see also Aguilar v. Trolio Landscaping, Inc.*, 7:16-cv-02230-CS, Dkt. No. 32 (S.D.N.Y. Feb. 16, 2017) (Seibel, *J.*) ("I am persuaded by counsel's submission that the hourly rates are reasonable; the reduced lodestar is reasonable. . . [a]ccordingly, I approve the settlement, including the fee provisions, as fair and reasonable."). Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit B**.

Additionally, Plaintiffs' counsel seeks reimbursement for its out of pocket litigation expenses in the amount of $1,115.14, comprised of the initial filing fee, service of process fees, postage, research, PACER fees, and travel. Plaintiffs' counsel's expense report reflecting these costs are attached hereto as **Exhibit C**.

Accordingly, Plaintiffs' counsel's request for a total of $16,076.76 as compensation for their work associated with the settlement of all FLSA claims is entirely reasonable.

### III. <u>Conclusion</u>

For the forgoing reasons, Plaintiffs, on behalf of the Parties, respectfully request that the Court approve the settlement of Plaintiffs' FLSA claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, but retain jurisdiction to enforce the terms of the Parties' Agreement. The Parties have attached a proposed order of dismissal as an exhibit to the Parties' Agreement for the Court's convenience.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

_____
Michael R. Minkoff, Esq.
*For the Firm*

Copies to: Counsel for Defendants (via ECF)